### In re SMITH et al.

### In re GILMORE.

(District Court, D. Massachusetts. March 6, 1922.)

#### No. 28458.

1. **Bankruptcy ⚷140(3)—Brokers are fiduciaries as to check delivered for purchase of particular stock, never consummated.**

   Where a customer delivered to brokers, who later became bankrupt, his check for the purchase of designated stock at a specified price, and the transaction was not consummated, because the stock could not be obtained for that price, the brokers held the check in a fiduciary capacity, and had no contractual claim against the customer for which it could be held as security.

2. **Bankruptcy ⚷140(3)—Claimant of trust in deposit held protected by collateral securing note paid by the deposit.**

   Where the bankrupts had deposited in their general account a check of claimant, which they held as fiduciaries and after the bankruptcy the bank applied the deposit to notes which were secured by collateral suffi-

cient to reduce their face value far below the amount of the deposit, the claimant is entitled, as against the trustees, to be put in the same position as if the collateral had been applied to the notes, so as to leave the funds held in trust for claimant in the deposit.

3. **Bankruptcy ⊂⇒140(3)—Possibility of other trust claims against fund does not authorize denial of claim.**

A claim to a portion of the bank deposit in the name of the bankrupt as a trust fund for plaintiff will not be denied, because of the possibility of other similar claims against the fund, where there is no showing there are such claims.

In Bankruptcy. In the matter of the estate of Ernest F. Smith and others, bankrupts. On claim of Folliard F. Gilmore. Allowed.

Henry P. Brown, of Boston, Mass., for claimant.
Francis T. Leahy, of Boston, Mass., for trustee.

MORTON, District Judge. The claimant turned over to Smith & Co. two checks, aggregating $800, with instructions that they were to purchase on his account certain stocks at stated prices. The stocks never were purchased, for the reason that they could not be obtained at the prices named. For some time after receiving the order Smith & Co. retained the checks. About a week before the failure, however, the checks were deposited in their general bank account in the National Shawmut Bank. At that time Smith & Co. were deeply insolvent, and must have known it. If the checks were, as the agreement and the retention of them up to that time would indicate, understood to be a special fund, the use of them was fraudulent.

The bank account remained at about $20,000 until the bankruptcy. Then the bank applied it on a note which it held against Smith & Co., leaving insufficient to pay this claim. The note, however, was secured by collateral; and if the collateral had been first applied on it, there would have been left in the deposit account many times enough to pay this claim. On these facts the learned referee was of opinion that the claimant was merely a general creditor and dismissed the petition.

[1] The Massachusetts law is much less favorable to special interests and claims in stock brokerage failures than that which is recognized in most of the states and by the United States Supreme Court. But even under the Massachusetts law it seems to me that on the facts stated a fiduciary relation was created with respect to the fund in question. It was not a payment in advance on account of goods purchased, as the learned referee states. Smith & Co. did not agree to sell the stocks to the claimant, but only to buy them for him if possible. The checks were put into their hands for that special purpose. At that time it was uncertain whether the purchase could be carried out; as things turned, it could not be, and it never was. Smith & Co. never became entitled to the deposit, and never had any contractual claim upon the claimant for which this deposit might be retained by them as security. The principles of law involved are very similar to those considered in Re Gay & Sturgis (D. C.) 251 Fed. 420, where the authorities are referred to.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[2, 3] As between the claimant and the trustees, it is clear that he is entitled to be put in the same position as if the bank had applied the collateral on the note before setting off the deposit into which the plaintiff's money had gone, and to follow his funds. It is suggested by the trustees that there may be other persons similarly defrauded, who also have special claims against the same fund to an amount more than the fund, and that therefore it is unsafe to allow this claim. It does not appear, however, that there are any other claimants. On the facts as they now appear, the claimant is entitled to a decree.

The order of the referee is vacated, and a decree may be entered, allowing the claim.